Sanders, Janet L., J.
This is an action pursuant to G.L.c. 93A, §4 alleging that the defendant Ortho-McNeil-Janssen Pharmaceuticals, Inc. (Janssen) engaged in unfair and deceptive trade practices in the marketing and sale of Risperdal, an anti-psychotic medication. The action was initiated by the Attorney General of the Commonwealth on behalf of Massachusetts consumers who have used the drug as well as all health care professionals (public and private) who have prescribed it. Before the Court are defendant’s Motion to Compel Discovery and the Commonwealth’s *378 Cross Motion for a Protective Order. The principal issue raised by both motions is whether the Attorney General’s obligation to search for and produce documents responsive to defendant’s discovery requests extends to other departments and agencies within the executive branch. For reasons set forth below, this Court concludes that her discovery obligations are limited to producing documents in the possession of her office.
The instant motions stem from Janssen’s First Request for Production of Documents, served on the Commonwealth on February 17, 2012. In the Definitions Section of those Requests, Janssen made clear that, in seeking documents from the “Commonwealth,” it expected production from all “political subdivisions, departments, or agencies thereof,” including but not limited to fifteen named state entities. Among those agencies included are MassHealth (which administers Medicaid and other health care coverage programs), the Department of Correction (which provides health care services to its inmate population), and the Department of Mental Health (providing care for mentally ill Massachusetts citizens). What followed were 95 separate requests for documents that sought information in the possession, custody, or control of these agencies dating back to December 1993.
The requests are also breathtakingly broad in scope. For example, several requests seek the production of all documents relating to any antipsychotics, not just Risperdal. One request seeks documents relating to any statement made to the Commonwealth (as broadly defined) by any patient or guardian in Massachusetts who has taken Risperdal at any time. Three other requests identify over fifty different programs within the Commonwealth from which Janssen seeks documents regarding their policies and procedures for prescribing antipsychotic medications. The requests seek minutes, calendars, attendance sheets and agendas for any “Commonwealth” meetings, communications by any “Commonwealth” representative with a host of federal agencies, protocols for the treatment of schizophrenia in any government-run health care facility, and the entire MassHealth claims data base.
The Attorney General responded to the Requests by producing 1,430 documents, 1,385 of which were general document retention policies. It also lodged both general and specific objections to the Requests. Its motion seeks a court ruling as to some (but not all) of those objections. First (and most significant for purposes of these motions), the Attorney General objects to production of documents from any other state agency, maintaining that these entities are not parties to the case and that her discovery obligations extended no further than the confines of the Healthcare Division of her office which undertook this prosecution. Second, the Attorney General objects to producing documents already in the possession of Janssen, particularly those documents Janssen produced pursuant to a Civil Investigative Demand made on the company. Finally, the Attorney General objects to Request No. 77 regarding document preservation and retention policies dating back to 1993. This Court’s rulings on each objection are set forth below.
1. Who is the plaintiff?
In arguing that it is entitled to document production from all state political subdivisions and agencies, Janssen contends that the plaintiff in this action is the Commonwealth of Massachusetts and thus the discovery obligations necessarily extend to all those within state government. Although the Attorney General is the chief law enforcement officer responsible for bringing and defending lawsuits in the name of the Commonwealth, Janssen argues that neither she nor the division which initiated this case is the Commonwealth, only the Commonwealth’s attorney. In addition, Janssen notes that Rule 34, Mass.R.Civ.P., does not limit a party’s discovery obligation to those documents in its physical possession but extends to documents over which the party has control. Janssen maintains that the Attorney General has legal control over other state agencies pursuant to G.L.c. 12 , §3 (which requires her to represent agencies in court) and is able to access their documents as a practical matter. Finally, Janssen argues that the state agencies from which it seeks discovery include health care professionals or serve populations on whose behalf this suit is brought. In order to defend itself from the claim of unfair and deceptive practices, Janssen says that it needs access to documents relating to these health care providers’ prescription of the Risperdal and information concerning those who received it as part of any government program.
The Attorney General responds that she brings this suit not because of her legal obligation to represent a particular state agency in a civil action but because of the independent authority granted to her under G.L.c. 93A, §4 to act in the public interest and protect consumers from unfair business practices. Accordingly, state agencies are not themselves parties, nor does the Attorney General have any particular power to demand that they search for documents responsive to Janssen’s Requests. To require her to seek production of documents from these other agencies (it is contended) would be not only unduly burdensome but also possibly put the Attorney General at loggerheads with the governor, who heads the executive branch. Finally, the Attorney General argues that the documents themselves are unlikely to contain information relevant to the dispute at hand. Although there is a paucity of case law to guide this Court, I am more persuaded by the Commonwealth’s arguments than those propounded by Janssen.
The handful of decisions (none in Massachusetts) dealing with this question reflect some common concerns.[1] The first stems from the recognition that all *379 agencies and departments within the executive branch do not speak with a single voice. In fact, they have different functions and spheres of responsibility, and some operate as quasi independent agencies. This notion that agencies are not part of a monolithic whole was the decisive consideration in New York v. National R.R. Passenger Corp, 233 F.R.D. 259 (N.D.N.Y. 2006). In that case, the court held that the defendant Amtrak was not entitled to obtain discovery from the New York Office of the State Comptroller (OSC), since the OSC operated as an independent agency over which the Attorney General (who had initiated the suit) exercised no control. Citing principles of federalism and comity, the court went on to say that “there is a presumption that separate governmental agencies under state law will not be aggregated together, without the showing of much more.” Id. at 264. In the instant case, Janssen’s Requests do not differentiate between state agencies, much less make any particularized showing that the Attorney General has any control over them, other than to point out that she is bound by statute to serve as their lawyer if they are sued or wish to bring suit in state court. See G.L.c. 12, §3. In this Court’s view, that is not enough from which to infer an obligation on her part to demand that these agencies open their files.
The second concern goes to the relationship between the governor and the Attorney General-. Each of them is an elected official operating independently of the other. If this Court were to conclude that state agencies, even those within the executive branch, necessarily become “parties” for discovery purposes any time that the Attorney General exercises her exclusive authority to bring an enforcement action, that could upset the constitutional balance of power. See e.g. United States v. American Express Co., 1:10-cv-04496-NGG-RER, Slip Op. (E.D.N.Y. July 29, 2011) (attached as Exhibit K to Defendant’s Document Appendix) (in action brought by elected attorneys general, court ruled that agencies within those states were not plaintiffs for discovery purposes since to hold otherwise would give those agencies a “virtual veto” over the action); see also Colorado v. Warner Chilcott Holdings Co., III, Ltd. No. 05-CV-2182 Slip Op. (D.D.C. May 8, 2007). This relationship between the Attorney General and the chief executive was an important factor in allowing discovery from executive branch agencies in United States v. AT&T Co., 461 F.Sup. 1314 (D.D.C. 1978), the antitrust case brought by the federal government to break up “Ma Bell.” In contrast to the instant case, the United States Attorney General is appointed by the President; consequently, the court reasoned that the President had at least been consulted before the decision was made to institute suit against AT&T and in all likelihood gave his approval. There is no such evidence of any prior consultation here: indeed, had the governor known that he would expose the executive branch to the massive document searches called for by Janssen’s Requests, he might well have opposed such a suit.
The third concern is one of fairness — both to the defendant who must have access to information necessary to prepare a defense to the claims against it, and to the government. In the AT&T case, one reason the court allowed broad discovery was because the allegations there at issue were “massive and wide ranging,” involving many federal departments. In contrast, the factual allegations in the case before this Court are limited to the marketing of a single medication and focus more particularly on its alleged promotion for off-label use by the elderly and children. The Complaint contains a single count alleging a violation of Chapter 93A and seeks an injunction and civil penalties as permitted by the statute. As the Supreme Judicial Court has explained, a “successful G.L.c. 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation ... or that the defendant intended to deceive the plaintiff,” since deceptiveness is based on an objective, not a subjective standard. Aspinall v. Philip Morris Co., 442 Mass. 381, 394 (2004) (citations omitted). In other words, the focus is on the defendant’s conduct without the need for proof of individualized injuiy. At the same time, Janssen’s requests are extraordinarily broad and on their face of questionable relevance.[2] Indeed, although a considerable portion of its papers is devotedtothe theoretical question of who the plaintiff is in this case, Janssen spends almost no time explaining why it needs the information that it seeks. Moreover, Janssen is not without recourse in the event it can demonstrate the need for certain documents: Rule 45 is always available as a mechanism for obtaining discovery from third parties, provided that the request is not unreasonable or oppressive. Accordingly, the Commonwealth’s general objection to requiring production of documents beyond those in the possession of her office is Sustained.
Having so concluded, however, this Court does not agree with the Attorney General that she need produce only those documents in the possession of the single division that is prosecuting this lawsuit. The concerns expressed above regarding production by other state agencies do not support such a limitation. Clearly, the Attorney General has control over documents within all divisions of her office, and there is no indication that such production would be unduly burdensome. The Attorney General argues that some divisions of her office have obtained documents from other agencies by virtue of having represented those agencies in separate litigation, and that to require production of these documents would have a “crippling effect.” She does not articulate why that would be a consequence, however.
2. Documents already in the possession of Janssen
In a specific objection to 25 of Janssen’s Requests, the Commonwealth states that Janssen already has *380 the documents responsive to those requests in its possession and that the Attorney General should not have to reproduce them for Janssen. In its memorandum in support of its Motion to Compel, Janssen agrees that the Attorney General need not turn over materials that the Commonwealth obtained from Janssen pursuant to its Civil Investigative Demand. Apart from that, however, it contends that this is not a legitimate basis for an objection, since it is entitled to know what information the Commonwealth is relying on in support df its claim. This Court agrees, and therefore this objection is Overruled.
3. Discovery of Document Retention Notices
Request No. 77 seeks copies of all document retention policies and litigation hold notices in effect from 1993 to the present. The Commonwealth produced certain generally applicable document retention policies in the possession, custody or control of the Attorney General but otherwise objects to the production of specific litigation hold notices issued in connection with this case on the grounds that they are not relevant and reflect privileged attorney communications. There is no evidence (much less any claim) that the Commonwealth has somehow destroyed or failed to preserve documents relevant to this matter. In the absence of such evidence, this Court fails to see why this request seeks information relevant and reasonably calculated to led to admissible evidence. Accordingly, the Commonwealth’s objection to this request is Sustained.
CONCLUSION AND ORDER
For the foregoing reasons, the Commonwealth’s Cross Motion,for a Protective Order based on the general and specific objections outlined- above is ALLOWED in part and DENIED in part. Janssep’s Motion to Compel Discoveiy is ALLOWED only in that the Court overrules certain objections to production lodged by the Commonwealth in its response dated March 21,2012. With these areas of disagreement now resolved, the Commonwealth is directed to supplement its response and also to comply with Standing Order 1-09 of the Rules of the Superior Court. This Court declines to act at this juncture on any other specific objections until such time as this supplemental response and production of documents is made.

 Although the Commonwealth cites two rulings by Massachusetts judges who have allowed protective orders where the Commonwealth made the same arguments as asserted here, they are of no assistance to this Court. In one case, the request for a protective order was unopposed. See Commonwealth v. Mega Life & Health Ins. Co., No. 06-4411 (paper#14) (Mass.Super. Sept. 19, 2007). In the other, the judge concluded that the materials sought were not relevant without reaching the question of whether state agencies were parties. Electronic Order, United States ex rel. Lisitza v. Johnson & Johnson, No. 1:07-cv-10288-RGS (D.Mass. May 15, 2012).

 This is not to say that the Commonwealth is off the hook in responding to Janssen’s Requests. Indeed, objections to specific requests not dealt with in this opinion are left for another day. On the other hand, this Court finds it difficult to rule on the question of who is a party for purposes of Rule 34 without taking into consideration the scope of the Requests themselves and the volume of documents that would have to be produced as a consequence of this Court’s decision on that issue.